UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN HARDIN,<br><br>        Plaintiff,<br><br>    v.<br><br>MENDOCINO COAST DISTRICT HOSPITAL, et al.,<br><br>        Defendants. | Case No. 17-cv-05554-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF No. 29 |

Before the Court is Defendants' motion to dismiss. ECF No. 29. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

Plaintiff Ellen Hardin brings this case against the following Defendants: her former employer, Mendocino Coast District Hospital ("MCDH" or "Mendocino"); MCDH's chief executive officer, Bob Edwards; the president of MCDH's board of directors, Steve Lund; and MCDH's chief financial officer, Wade Sturgeon. ECF No. 10 ¶¶ 4-8, 14. Hardin was formerly employed as MCDH's chief human resources officer ("CHRO"). *Id.* ¶ 14.

Hardin's first amended complaint ("FAC") alleges the following: Two employees "complained [to Hardin] of possible fraudulent billing of government insurance programs (Medicare/Medical/Medicaid), and complained of harassment and retaliation associated with reporting it to management." *Id.* ¶ 17. Hardin informed both Sturgeon and Edwards of these complaints. *Id.* ¶ 18-19. As a result, she "was the target of discrimination, harassment and retaliation . . . in various ways including, but not limited to, unwarranted discipline, criticism, stripping of her responsibilities, demotion, denying requests for time off, making false claims about her job performance, suspension, leaking confidential information to the news media,

defaming Plaintiff, and ultimately termination." *Id.* ¶ 19. For example, the Plant Services department was transferred from her to Sturgeon, which "amounted to 50% reduction of Plaintiff's job duties, and a loss of standing in the organization." *Id.* ¶ 25.

After Hardin communicated with Edwards "regarding a rehiring issue with a former male employee and his post-offer drug and alcohol screening," Edwards "replied by stripping away Plaintiff's ability to go directly to Labor Counsel with issues, and required that she first go to Edwards to seek input on employment matters." *Id.* ¶¶ 27-28. "By requiring Plaintiff to 'seek input' from Edwards in advance of contacting counsel on employment matters, Edwards removed a key resource which Plaintiff had access to in performing her duties as CHRO, and took away Plaintiff's ability to do her job as immediate and necessary circumstances warranted. . . ." *Id.* ¶ 28.

Hardin also spoke with Sturgeon and Edwards about a pay increase, which Hardin believed was warranted but Sturgeon and Edwards did not, for a recently promoted "female Hispanic/Latin employee." *Id.* ¶ 29. Sturgeon "bypassed Plaintiff and undermined her authority" by directing the payroll specialist "to manually override the pay increase to [that employee] in the system and to pay [her] as she had been paid prior to promotion 'until further notice.'" *Id.* Edwards subsequently denied one of Hardin's requests for time off. *Id.* ¶ 30.

In addition, Hardin contested Sturgeon's desire to terminate an employee who was out on a leave of absence under the Family and Medical Leave Act ("FMLA"). *Id.* ¶ 33. Her recommendation to keep the employee on leave until the leave expired was questioned by both Sturgeon and Edwards, who believed that the employee was not eligible for FMLA leave. *Id.* ¶ 37. Both Edwards and Sturgeon "continued to marginalize Plaintiff and usurp her authority as CHRO, bypassing Plaintiff and taking away her roles and responsibilities." *Id.* ¶ 35.

Hardin's employment was discussed at a December 15, 2016 board meeting in closed session, during which Edwards made "accusations of wrongdoing" and at which Hardin was not allowed to speak. *Id.* ¶¶ 40, 43. "In Plaintiff's experience, no member of the executive leaders had been scheduled to appear before the Board of Directors for a Performance Review." *Id.* ¶ 41. Edwards placed Hardin on leave the next day, telling her "that he 'lost faith in her judgment' and

that it was time to part ways or company or words to that effect, indicating his intent to end Plaintiff's employment." *Id.* ¶ 44.

Hardin subsequently communicated by email and met with Lund about her belief that "she had experienced discrimination, harassment and retaliation and that it was due to fulfilling her obligations to report possible fraudulent billing of MediCal, Medicaid, and/or Medicare patient services." *Id.* ¶¶ 45-46. The board hired an outside investigator to investigate Hardin's claims. *Id.* ¶¶ 47-48. Although Hardin's name was supposed to be confidential, the *Anderson Valley Advertiser* published two articles containing her name, one of which stated that, "Ms. Hardin is on some sort of leave at present and that she will no longer be employed at MCDH in the future." *Id.* ¶ 49-51. Lund presented Hardin with a letter containing a severance offer on March 13, 2017. *Id.* ¶ 53. The letter provided that, regardless of whether the offer was accepted, Hardin's "employment with MCDH will end on March 25, 2017." *Id.*

Based on these allegations, Hardin asserts fourteen causes of action: (1) violation of California Labor Code sections 98.6 and 1102.5; (2) violation of the California False Claims Act, Cal. Gov't Code § 12653; (3) violation of the federal False Claims Act, 31 U.S.C. § 3170; (4) violation of the right to free speech under the First Amendment, cognizable through 42 U.S.C. § 1983; (5) discrimination based on age and gender, Cal. Gov't Code § 12940(a); (6) associational discrimination, Cal. Gov't Code §§ 12940(a), 12926(o); (7) harassment/hostile work environment, Cal. Gov't Code § 12940(j); (8) retaliation, Cal. Gov't Code § 12940(h); (9) failure to prevent harassment, discrimination, and retaliation, Cal. Gov't Code § 12940(k); (10) intentional infliction of emotional distress; (11) negligent infliction of emotional distress; (12) negligent hiring, supervision, and retention; (13) defamation; and (14) a claim under the Private Attorneys General Act, Cal. Labor Code §§ 2699 *et seq. Id.* ¶¶ 64-193. The fourth, tenth, eleventh, and thirteenth causes of action are asserted against all Defendants. *Id.* ¶¶ 100, 155, 164, 178. The seventh is asserted against all Defendants except Lund. *Id.* ¶ 133. All other causes of action are brought only against MCDH. *Id.* ¶¶ 65, 75, 87, 116, 124, 143, 151, 170, 186.

Defendants move to dismiss the second, third, fourth, seventh, tenth, eleventh, twelfth, and thirteenth causes of action.

3

## II. LEGAL STANDARD

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## III. DISCUSSION

### A. False Claims Act Retaliation

Hardin's second and third causes of action are for retaliation under the California False Claims Act ("CFCA"), Cal. Gov't Code § 12653, and the federal False Claims Act ("FCA"), 31 U.S.C. § 3730. The analysis is the same under both statutes. *Kaye v. Bd. of Trustees of San Diego Cty. Pub. Law Library*, 179 Cal. App. 4th 48, 59-60 (2009) (applying federal FCA law to analyze CFCA retaliation claim "because the CFCA is patterned on a similar federal statute").

A retaliation claim under the FCA has three elements: "(1) that [the plaintiff] engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Defendants argue that Hardin fails to allege the first and second elements.

"An employee engages in a protected activity by investigating matters which are calculated or reasonably could lead to a viable False Claims Act action." *United States ex rel. Campie v.*

4

*Gilead Scis., Inc.*, 862 F.3d 890, 907 (9th Cir. 2017) (quotation marks, alterations, and citation omitted). Defendants argue that Hardin alleges only that she received complaints of fraudulent activity, but not that she actually investigated those matters herself. However, the Ninth Circuit has explained that "an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002) (quoted with approval in *Campie*, 862 F.3d at 908). There is no requirement that the employee's investigation take on any particular form. In this case, Hardin alleges that she "learned of several complaints of alleged fraudulent billing from two long-time Account Billers who worked in the business office." ECF No. 10 ¶ 17. She further alleges that she advised the billing office manager and Sturgeon "to cease and desist from any activity that could lead to further allegations while an investigation was conducted"; that she "had a follow up meeting with the two Account Billers regarding their complaints"; that she told Edwards "that she continued to deal with issues involving . . . the investigations related to the allegations of fraud"; and "that the issues regarding the fraudulent billing continued, even in the CFO's absence while he was on vacation." *Id.* ¶¶ 18-19, 22. Moreover, in an email she wrote to Edwards, she stated that she "report[ed] that I believed there was sufficient substance to [the complaints] to warrant further investigation," ECF No. 10-1 at 2, and she alleges that she brought "forth what she considered to be fraudulent billing issues," ECF No. 10 ¶ 38. Construed in a light most favorable to Hardin, these allegations are sufficient – if only just – to plausibly allege a good faith belief that Defendants were possibly committing fraud, and therefore sufficient to allege protected activity.[1]

Hardin has also sufficiently alleged knowledge by her employer. Ordinarily, "an allegation of knowledge is not a high bar." *Campie*, 862 F.3d at 908. But when "monitoring and reporting activities . . . are by-and-large the types of activities [an employee] was required to undertake as part of his job" – i.e., "when an employee is tasked with . . . investigations" of allegedly fraudulent

---

[1] Defendants do not challenge that a reasonable employee in Hardin's position might believe that MCDH was engaged in fraudulent billing.

5

activity – "it takes more than an employer's knowledge of that activity to show that an employer was on notice of a potential *qui tam* suit." *Id.* "In such circumstances, a defendant is put on notice only where [the plaintiff] has suggested that she intends to use the alleged noncompliance as the basis for an FCA claim, or else intends to report the misconduct to government officials." *United States v. Somnia, Inc.*, No. 1:15-CV-00433-DAD-EPG, 2018 WL 684765, at *10 (E.D. Cal. Feb. 2, 2018). Defendants argue that Hardin falls into the category of employees who must allege heightened notice, but the complaint does not compel this result. Hardin alleges that she was "fulfilling her obligations to report possible fraudulent billing of MediCal, Medicaid, and or Medicare patient services." ECF No. 10 ¶ 45. But, construed in a light most favorable to Hardin, this can be read as stating a general ethical obligation to report alleged fraud, not that Hardin "was required to undertake [reporting and investigating fraud complaints] in fulfillment of her job duties." *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th Cir. 1996) (cited with approval in *Campie*, 862 F.3d at 908). Indeed, the complaint elsewhere alleges that Hardin "went to the CFO and CEO and reported the issues" because "[i]t would be a violation of federal and state laws for Mendocino to engage in fraudulent billing." ECF No. 10 ¶ 20. This is distinct from alleging that she did so because her job duties required such reporting. The Court therefore does not apply the heightened notice standard to this case. Hardin has met the lower notice standard by alleging that she told Edwards and others about the potential fraudulent billing. *See Mendiondo*, 521 F.3d at 1104 (sufficient for plaintiff to allege that "she complained to [the] CEO . . . about possible 'civil and criminal violations,'" which could be construed to include "suspected Medicare fraud"). Accordingly, Defendants' motion to dismiss the FCA and CFCA retaliation causes of action is denied.

**B.  Section 1983 (First Amendment Retaliation)**

Hardin's fourth cause of action, under 42 U.S.C. § 1983, alleges that Defendants unlawfully retaliated against her for exercising her First Amendment right to free speech. Section 1983 imposes liability for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a "person" acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.

### 1. Speech as a Private Citizen or Public Employee on a Matter of Public Concern

When considering a First Amendment retaliation claim by a public employee, courts must consider five factors:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). "[F]ailure to meet any one of [these factors] is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1091 n.4 (9th Cir. 2013) (en banc). Defendants argue that Hardin's allegations fail to satisfy the first and second factors.

The Court rejects Defendants' arguments as to the first factor, whether Hardin spoke on a matter of public concern. Hardin invokes the First Amendment based on her reports of "fraudulent billing of government insurance programs (Medicare/Medical/Medicaid)" and expressed "concerned regarding Mendocino's violation of the FEHA." ECF No. 10 ¶ 106. "Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern." *Thomas v. City of Beaverton*, 379 F.3d 802, 809 (9th Cir. 2004).

The second factor considers whether an individual speaks as a private citizen or public employee. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). This analysis requires a "fact-intensive" inquiry, and "no single formulation of factors can encompass the full set of inquiries relevant to determining the scope of a plaintiff's job duties." *Dahlia*, 735 F.3d at 1074. However, the Ninth Circuit has set forth "a few guiding principles" to "serve as a necessary guide to analyzing the fact-intensive inquiry" of whether an employee is speaking pursuant to his or her duties. *Id.* at 1074, 1076. First, "[w]hen a public employee communicates with individuals or entities outside of his chain of command, it is

7

unlikely that he is speaking pursuant to his duties." *Id.* at 1074. Second, "[w]hen an employee prepares a routine report, pursuant to normal departmental procedure, about a particular incident or occurrence, the employee's preparation of that report is typically within his job duties," but "if a public employee raises within the department broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee, except when the employee's regular job duties involve investigating such conduct." *Id.* at 1075. Third, and finally, "when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties." *Id.*

In this case, the allegations on Hardin's alleged reports of potentially fraudulent billing are sufficient to survive a motion to dismiss. As discussed above, when construed in a light most favorable to Hardin, the complaint does not allege that such reports or investigations were part of Hardin's official job duties. This is sufficient to plausibly allege that she was not speaking as a public employee when she reported the alleged fraud, and Defendants' motion to dismiss is denied as to this category of speech.

However, Hardin's allegation that she engaged in protected speech when she "voiced concerns regarding Mendocino's violation of the FEHA, involving a female Hispanic/Latin employee entitled to a raise and a male employee who sought a protected leave of absence for health issues" does not survive scrutiny, even at this early pleadings stage. ECF No. 10 ¶ 106. Hardin elsewhere alleges that she was "exercising her duties and obligations as the CHRO under the FEHA" when she "sought to ensure" that these employees' FEHA rights were protected. *Id.* ¶ 126-27. She does not allege that she discussed these issues outside her chain of command, nor does she allege that she ever spoke "in direct contravention to [her] supervisor's orders." *Dahlia*, 735 F.3d at 1075. Thus, she does not allege that she was speaking as a private citizen rather than as a public employee, and Defendants' motion to dismiss is granted as to this category of speech.

Although it appears unlikely that Hardin can cure this deficiency with leave to amend without contradicting the allegations in the FAC, Ninth Circuit case law is inconsistent as to whether an amended pleading may contradict an original. *Compare Airs Aromatics, LLC v.*

8

*Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (noting, in denying leave to amend, that a "party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding" (quotation marks, alteration, and citation omitted)), *with PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith – a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11 – inconsistent allegations are simply not a basis for striking the pleading."). The Court will allow leave to amend out of an abundance of caution. However, Hardin is advised that, "when evaluating an amended complaint, the court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether an amended complaint plausibly suggests an entitlement to relief." *McKenna v. WhisperText,* No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (quotation marks, alteration, and citation omitted).

### 2. **Defendant MCDH**

Defendants move to dismiss the § 1983 cause of action against MCDH on grounds that MCDH is an arm of the state and therefore not a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that "a State is not a person within the meaning of § 1983); *id.* at 70 (applying holding to "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes"). MCDH asserts that it is a local health care district established under California Health and Safety Code sections 32000 *et seq.* and cites a district court case that held that local health care districts are not "persons" under § 1983. ECF No. 29 at 8 (citing *Heath v. Redbud Hosp. Dist.*, 436 F. Supp. 766, 767 (1977)). However, the closest allegation in the complaint is that MCDH "is fully licensed by the Department of Health Services" and "is a member of the Association of California Hospital Districts." ECF No. 10 ¶ 13. Licensing or membership in an association does not establish that MCDH was formed pursuant to the cited statute. Moreover, even if MCDH were established under that statute, Defendants' reliance on *Heath* is not persuasive. That court held, in 1977, that

9

1   a hospital district is "a subdivision of the State *and county* governments" at a time when counties

2   were also considered not to be "persons" under § 1983. 436 F. Supp. at 768 (emphasis added).

3   The cases relied on by *Heath* for the proposition that municipalities and counties are not "persons"

4   are no longer good law. *Id.* (citing *Monroe v. Pape*, 365 U.S. 167 (1961), and *Moor v. Cty. of

5   Alameda*, 411 U.S. 693 (1972)); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978)

6   (overruling *Monroe* "insofar as it holds that local governments are wholly immune from suit under

7   § 1983"); *id.* at 696 & n.61 (noting that *Moor* "reaffirmed *Monroe* without further examination").

8   In addition, at least one court has concluded that a local health care district is not an "arm of the

9   state" for diversity jurisdiction or Eleventh Amendment purposes. *Firstsource Sols. USA, LLC v.

10  Tulare Reg'l Med. Ctr.*, No. 1:15-CV-01136-DAD-EPG, 2017 WL 4410101, at *1-3 (E.D. Cal.

11  Oct. 4, 2017) (diversity jurisdiction); *id.* at *2 n.1 ("[T]he analysis of whether a government body

12  is an arm of the state for Eleventh Amendment purposes mirrors the same question for diversity

13  jurisdiction purposes, save that a state agency may waive immunity but may not create diversity

14  jurisdiction through waiver."). MCDH's motion to dismiss based on grounds that it is not a

15  "person" is denied.

### 3. Defendant Lund

Defendants also move to dismiss the § 1983 cause of action against Lund on grounds that Hardin has not alleged "any facts that plausibly suggest [his] personal participation in the adverse actions." ECF No. 29 at 23. Defendants are correct that Lund cannot be liable for the alleged "several months" of "discrimination, harassment and retaliation" that occurred before Hardin first communicated with Lund about the alleged fraudulent billing on December 15, 2016. ECF No. 10 ¶ 42. But Hardin also alleges that she met with Lund, "who wanted to hear more about Plaintiff's complaint and was upfront about having the meeting to act in the District's best interests"; that he "reported that the Board directed Legal Counsel to pursue a response to" Hardin; and that he notified her of MCDH's severance package offer. *Id.* ¶¶ 46, 52, 53. Lund also signed the letter presenting the severance agreement to Hardin, as well as the severance agreement itself. ECF No. 10-1 at 16-21. These allegations are sufficient to allege Lund's personal involvement in Hardin's termination. Defendants' motion to dismiss the § 1983 cause of action against Lund is denied.

10

**C. Harassment/Hostile Work Environment**

Hardin's seventh cause of action is for harassment under California Government Code section 12940(j). "To establish a claim for harassment, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121 (1999)). Although Hardin conclusorily alleges that she "was subjected to unwanted harassing conduct and a hostile work environment because of her age, gender, her opposition to discrimination, and her insistence that Mendocino comply with the FEHA concerning an employee who was on leave for a health issue and a Latin/Hispanic female employee who was entitled to a raise," ECF No. 10 ¶ 134, her opposition relies on allegations that Hardin suffered "numerous adverse employment actions . . . *because of engaging in the protected activity of exercising her duties to the FEHA*," ECF No. 37 at 25 (emphasis added). But section 12940(j) prohibits harassment based on membership in a protected group, not for complaining that the employer was violating FEHA.[2] *See Lawler*, 704 F.3d at 1244. Defendants' motion to dismiss this claim is therefore granted, with leave to amend. If Hardin amends this claim, she should also consider that:

> commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the

---

[2] Section 12940(h) prohibits retaliation "against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). This is the subject of Hardin's eighth cause of action, which Defendants do not seek to dismiss.

11

scope of job duties which are not of a type necessary to business and personnel management.

*Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64-65 (1996).

### D. Defamation

Hardin's thirteenth cause of action is for defamation, which "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."[3] *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (quotation marks and citation omitted). In response to Defendants' argument that her complaint failed to identify any allegedly defamatory comments, Hardin points to the following:

> Plaintiff was falsely accused of having her department communicating with vendors regarding accounts payables matters. FAC, ¶ 21. Plaintiff was accused of doing research on CFO Sturgeon's staff, the off-site coders, without consulting him. FAC, ¶ 36. Whereas no member of the executive leaders had been made to appear before the Board of Directors for a Performance Review, Plaintiff had. FAC, ¶ 41. Edwards falsely accused Plaintiff of cost overrun and attempted to get Plaintiff to admit wrongdoing. FAC, ¶ 43. Plaintiff was falsely accused of having poor judgment and told she needed to save face. FAC, ¶ 44. An MCDH doctor, Peter Glusker, M.D., leaked confidential information about Plaintiff to a newspaper, which indicated that Plaintiff was on leave and would no longer be employed with MCDH in the future. FAC, ¶ 49-51. This was during a time when Plaintiff had not yet received notice of her termination, and it was not helpful to Plaintiff in finding future employment, as it was harmful to her reputation. *Id.* [¶] 50.

ECF No. 37 at 27.

The majority of these alleged statements do not support a defamation claim. The allegations in paragraphs 21 and 36 and the first part of paragraph 43 do not support a claim for defamation because the alleged comments were made only to Hardin and not to any third party. *See* ECF No. 10 ¶¶ 21, 36, 43; *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003) (publication requires communication "*to a third person* who understands its defamatory meaning as applied to the plaintiff" (emphasis added)). Paragraph 41 does not allege that any statement was made; even

---

[3] The Court discusses this cause of action out of order because whether Hardin has stated a defamation claim affects the Court's analysis on whether she has stated a claim for intentional infliction of emotional distress.

12

if Hardin were singled out for a performance review before the board of directors, that does not constitute a defamatory statement. ECF No. 10 ¶ 41. Paragraph 44 alleges that "Edwards informed Plaintiff that he 'lost faith in her judgment.'" *Id.* ¶ 44. This is a subjective opinion that cannot support a defamation action. *Taus*, 40 Cal. 4th at 720. The statements attributable to Glusker in paragraphs 49-51 are the following:

> Closed session agenda does not list the item Mr. Ruprecht [legal counsel to the MCDH Board] said he would report on at this meeting about follow-up on Ellen Hardin's [Chief Human Resources Officer at MCDH] emails and allegations of harassment and possible fraudulent billing problems. I believe the board needs a report at this time on those matters.

ECF No. 10 ¶ 49, 51; ECF No. 10-1 at 8, 12 (alterations in original). These statements, which state only that Hardin sent emails and made allegations of harassment and possible fraudulent billing problems, do not have the potential to damage Hardin's reputation and are therefore not defamatory. *See Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999) ("Defamation is an invasion of the interest in reputation."). As for the statement in the *Anderson Valley Advertiser* that, "Queries posed to reliable sources in and outside the hospital appear to disclose that Ms. Hardin is on some sort of leave at present and that she will no longer be employed at MCDH in the future," alleging that "reliable sources" might have disclosed information does not sufficiently allege conduct by any Defendant. ECF No. 10 ¶ 50; ECF No. 10-1 at 12.

However, the allegations in the second part of paragraph 43 do support a defamation claim. Hardin alleges that Edwards made "accusations of wrongdoing in front of all Board Members" on December 15, 2016. ECF No. 10 ¶ 43. It can be inferred that these accusations were about "cost overrun[s]" because Hardin alleges that Edwards questioned her about that and attempted to get her to admit to wrongdoing in the immediately preceding sentence. *Id.*; s*ee also id.* ¶ 40 (alleging that a letter from Edwards to Hardin discussing the board meeting agenda "stated that there were some subjects that needed to be discussed regarding project overages of two projects that Plaintiff had overseen while acting as Plant Services Leader"). Construed in a light most favorable to Hardin, this allegation plausibly states a claim for defamation. Accordingly, Defendants' motion

13

1  to dismiss is denied as to Edwards but granted as to Lund and Sturgeon, who are not alleged to
2  have made any allegedly defamatory statements.

### E. Infliction of Emotional Distress Against Individual Defendants

Defendants move to dismiss Hardin's tenth and eleventh causes of action, for intentional and negligent infliction of emotional distress, on grounds that they are barred by the workers' compensation exclusivity doctrine and that Hardin has failed to allege the necessary elements.

#### 1. Workers' Compensation Exclusivity

First, unless an employer's conduct "contravenes fundamental public policy" or "exceeds the risks inherent in the employment relationship, an employee's emotional distress injuries are subsumed under the exclusive remedy provision of workers' compensation." *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754 or (1992) (citation omitted). Claims based on distress caused by alleged whistleblower retaliation do not fall within either exception and are "barred by the workers' compensation exclusive remedy provisions." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 903 (2008). However, "unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity." *Light v. Cal. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017).[4]

Although Defendants argue that Hardin has failed to allege harassment, and the Court dismisses Hardin's eighth cause of action under section 12940(j) in this order, Defendants have not moved to dismiss the fifth, sixth, or eighth causes of action for discrimination, associational discrimination, and retaliation under FEHA. Thus, following *Light*, Hardin's claims for infliction of emotional distress are not barred by workers' compensation exclusivity.

#### 2. Negligent Infliction of Emotional Distress

However, Hardin has failed to allege a duty, which is a necessary element of a claim for negligent infliction of emotional distress: "[T]here is no independent tort of negligent infliction of

---

[4] *Light* addressed only intentional infliction of emotional distress, but neither Defendants nor Hardin suggest that workers' compensation exclusivity applies differently to claims involving negligent infliction of emotional distress.

14

emotional distress. The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element. That duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984-85 (1993) (citations omitted). In her opposition brief, Hardin cites to paragraphs 163-68 of the FAC for the proposition that "Plaintiff has properly alleged all of the essential elements of the cause of action." ECF No. 32. But those paragraphs do not allege any duty. *See* ECF No. 10 ¶¶ 163-68. Accordingly, Defendants' motion to dismiss Hardin's negligent infliction of emotional distress claim is granted with leave to amend.

### 3. Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotation marks and citation omitted). "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1050-51 (quotation marks and citation omitted). In the employment context:

> Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.

*Janken*, 46 Cal. App. 4th at 80.

The alleged conduct in this case includes "unwarranted discipline, criticism, stripping of [Hardin's] responsibilities, demotion, denying requests for time off, making false claims about her job performance, suspension, leaking confidential information to the news media, defaming Plaintiff, and ultimately termination." ECF No. 10 ¶ 19. The vast majority of these activities are "personnel management decisions" that cannot give rise to an intentional infliction of emotional

15

distress claim even if, as Hardin alleges, they were "improperly motivated" by discrimination or retaliation. *Janken*, 46 Cal. App. 4th at 80; *see also id.* at 64-65 (characterizing "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like" as "personnel management actions").

However, the Court concluded above that Hardin has stated a defamation claim against Edwards based on his alleged statements at a board meeting. Defendants do not argue, and the Court is aware of no authority for the proposition that, such conduct falls within the realm of "personnel management decisions." Defendants' motion to dismiss the intentional infliction of emotional distress claim is therefore denied as Edwards. The motion is granted as to Lund and Sturgeon, who are not alleged to have engaged in any conduct outside of personnel management activities.

### F. Tort Claims Against MCDH

Finally, Defendants move to dismiss the tenth through twelfth causes of action – state law claims for intentional infliction of emotional distress; negligent infliction of emotional distress; and negligent supervision, hiring, and retention – on grounds that MCDH is immune from suit.

Under California law, "[a] public entity is not liable for an injury" unless "otherwise provided by statute." Cal. Gov't Code § 815(a); *Miklosy*, 44 Cal. 4th at 899. One such statutory basis for liability is California Government Code section 815.2(a), which extends liability to a public entity "for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Because the intentional infliction of emotional distress claim against Edwards survives, Defendants' motion to dismiss this claim as to MCDH is denied. The motion is granted with leave to amend as to the negligent infliction of emotional distress claim against MCDH.

Section 815.2(a) does not apply to the negligent supervision, hiring, and retention claim because "[l]iability for negligent supervision and/or retention of an employee is one of direct

16

liability for negligence, not vicarious liability." *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006).[5] Hardin also contends that MCDH is liable under California Civil Code sections 1708 and 1714(a), but these are not sufficient to impose liability on public entities: "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714." *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2003). Section 1708 "suffers from the same deficiencies in this context as section 1714: it neither declares public entities liable nor imposes a duty of care specifically on public entities." *City of Rialto v. U.S. Dep't of Def.*, No. 5:04-CV-00079-PSG-SS, 2005 WL 5519062, at *8 (C.D. Cal. Aug. 16, 2005). Accordingly, Defendants' motion to dismiss the negligent supervision cause of action, which is alleged against MCDH only, is granted. Although it is not clear that Hardin will be able to cure this claim by amendment, the Court will allow leave to amend out of an abundance of caution. If Hardin chooses to amend this claim, she should include in her amended complaint the statutory basis for liability.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. The motion is granted, with leave to amend, as to: the fourth cause of action for violation of the First Amendment as it relates to speech on alleged FEHA violations; the seventh cause of action for violation of California Government Code section 12940(j); the tenth cause of action for intentional infliction of emotional distress, as to Defendants Lund and Sturgeon only; the eleventh cause of action for negligent infliction of emotional distress; the twelfth cause of action for negligent supervision,

---

[5] The California Supreme Court has held that "school personnel owe students under their supervision a protective duty of ordinary care, for breach of which the school district may be held vicariously liable." *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 865 (2012). But "[a]bsent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability under section 815.2." *Id.* at 877. The Court is aware of no authority "finding a similar special relationship in the employment context" and "declines to extend the reasoning of *C.A.* here." *Wells v. Regents of Univ. of Cal.*, No. 15-CV-01700-SI, 2015 WL 5138181, at *6 (N.D. Cal. Sept. 1, 2015).

17

hiring, and retention; and the thirteenth cause of action for defamation, as to Defendants Lund and Sturgeon only. The motion is denied in all other respects.

Any amended complaint must be filed within thirty days of the date of this order. Failure to file a timely amended complaint will result in dismissal of the dismissed claims with prejudice.

**IT IS SO ORDERED.**

Dated: June 13, 2018

_____
JON S. TIGAR
United States District Judge