United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN HARDIN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MENDOCINO COAST DISTRICT HOSPITAL, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-05554-JST (TSH)<br><br>**ORDER DENYING DEFENDANTS' DISCOVERY MOTION**<br><br>Re: Dkt. Nos. 86, 96 |

Plaintiff Ellen Hardin has sued the Mendocino Coast District Hospital, its CEO Bob Edwards, its Board President Steve Lund, and its CFO Wade Sturgeon. She alleges a broad range of claims, including defamation and violations of the federal and state false claims acts, but most of her claims are employment related. Second Amended Complaint ("SAC"), ECF No. 50. By letter brief, the Defendants asked the Court to order Hardin to undergo a mental exam under Federal Rule of Civil Procedure 35 and to produce her mental health records, and they also sought a Court order that they may use documents they subpoenaed from her last two employers (the ones she worked for before MCDH). ECF No. 86. Because the Court believed these issues merited more complete briefing, it ordered Defendants to file a formal motion under Local Rule 7, which they did. ECF Nos. 93, 96. The Court held a telephonic hearing on April 3, 2019, and now issues this order.

**A.　Mental Exam**

Rule 35 provides that a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination" upon a showing of "good cause," Fed. R. Civ. Proc. 35(a)(1) & (a)(2)(A). These requirements "are not met by mere conclusory allegations of the pleadings – nor by mere relevance to the case – but require an affirmative

showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). "Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements," *id*.

"A mental condition is 'in controversy' when it is itself the subject of the litigation." *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 164 (N.D. Cal. 2013). In general, this means that one or more of the following factors is present: (1) the complaint includes a claim for intentional or negligent infliction of emotional distress; (2) the plaintiff alleges a specific mental or psychiatric injury or disorder; (3) the plaintiff claims unusually severe emotional distress; (4) the plaintiff offers expert testimony to support the claim of emotional distress; or (5) the plaintiff concedes that her mental condition is "in controversy" for purposes of Rule 35. *Id*. By contrast, a mental condition is not "in controversy" when a plaintiff alleges garden variety emotional distress, such as alleging that she suffered emotional distress as a result of employment discrimination. *Id*. at 164-65 (citing *Lahr v. Fulbright & Jaworski*, 164 F.R.D. 204 (N.D. Tex. 1996)). Suffering a legal wrong is often emotionally distressing, but if that qualified as putting a mental condition "in controversy," courts would be ordering mental exams all the time, which is inconsistent with the "discriminating application" required by Rule 35. *Schlagenhauf*, 379 U.S. at 118.

Here, Hardin has put her mental condition "in controversy." Her tenth claim for relief is for the intentional infliction of emotional distress. SAC, ¶¶ 175-89.[1] That is enough to put her mental condition "in controversy." *Gavin*, 291 F.R.D. at 164.

Defendants argue that Hardin also satisfies the second and third *Gavin* factors, listed above. However, it's less clear that Hardin alleges a specific mental disorder. Her initial disclosures list 18 types of emotional distress she suffers, such as grief, fright, and so on. ECF No. 97-1 at 11-12. Seventeen of them (all except "anger") come from the California jury instructions,

---

[1] Her eleventh claim for relief is for the negligent infliction of emotional distress, SAC ¶¶ 190-202, but the Court dismissed it without leave to amend. ECF No. 72 at 9-10

the sources and authority they cite, or *EEOC v. AutoZone, Inc.*, 2007 WL 2126517 (D. Ariz. July 23, 2007). *See* CACI Nos. 1620, 1621, 1622, 1623, 3905A. Of the 18, the only one that on its own would qualify as a specific mental or psychiatric injury or disorder is probably depression. Others, such as "mental suffering," are too vague; and some, such as "worry" and "inconvenience," affect everyone in some way. But looking at each item on the initial disclosures misses the forest for the trees. The fact that Hardin lists 18 types of emotional distress, ranging from "indignity" to "terror," means that her emotional distress claim really is not specific. Her attorney simply wrote down everything that an emotional distress claim could be.

Does Hardin claim unusually severe emotional distress? She certainly does in paragraph 185 of the SAC, alleging that "[a]s a result of Defendants Edwards, Lund and Sturgeon['s] conduct, Plaintiff has suffered severe emotional distress." It sounds especially severe when you read her prayer for relief, which seeks compensation for her "[m]edical, hospital and psychological bills, including past, present and future bills." SAC, page 44. Someone who has been hospitalized for emotional distress has likely suffered unusually severe emotional distress.

But it turns out Hardin hasn't been. Defendants' request for production ("RFP") 78 asked for all documents relating to any "monetary expenses" paid by Hardin or on her behalf relating to her claim for mental or emotional distress. ECF No. 97-2. Her response was that she does not have any. *Id*. The same was true for RFP 79, which asked for documents relating to any treatment concerning the claim for mental or emotional distress, and for RFP 80, which sought documents identifying any healthcare providers that treated her for mental or emotional distress. *Id*. As she explained in response to interrogatory 1, which asked her to identify all the healthcare providers who she consulted with or who treated her for emotional distress, Hardin "has not received treatment from a healthcare provider." Instead, she "talked to her family members about the emotional distress." ECF No. 97-3. And in response to interrogatory 2, which asked her to describe all the medical treatment she received, including every medication she has been prescribed for her emotional distress, Hardin explained that she "has not received any medical treatment or taken prescription medication for her emotional distress." Instead, she "walks six miles per day as treatment." *Id*.

3

Dealing with life's problems by talking to family members and taking long walks is worlds away from unusually severe emotional distress. Despite the allegations in the SAC and the laundry list in the initial disclosures, Hardin's interrogatory responses make clear that her claim is very close to garden variety emotional distress. Because she alleges a claim for the intentional infliction of emotional distress, she has technically put her mental condition "in controversy." But there is no other sense in which this is anything other than garden variety emotional distress. *See Reiter v. Metro. Transp. Auth. of New York*, 2003 WL 22271223, *9 (S.D.N.Y. Sept. 30, 2003) (in garden variety claims, "the evidence usually is limited to the testimony of the plaintiff, who describes the emotional distress in vague or conclusory terms, presents minimal or no evidence of medical treatment, and offers little detail of the duration, severity, or consequences of the condition").

The question, then, is whether Defendants have satisfied Rule 35's second requirement that there must be "good cause" for the exam. "To establish 'good cause' exists for an IME [independent medical exam], the moving party generally must offer specific facts justifying the discovery." *Gavin*, 291 F.R.D. at 165. "Relevant factors courts consider include the possibility of obtaining desired information by other means, whether plaintiff plans to prove her claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress." *Id*. (citation and quotation marks omitted).

Here, there is no good cause for the mental exam. It was possible to obtain the desired information by other means, namely, by deposing Hardin. The deposition excerpt provided by Defendants tends to confirm the garden variety nature of her emotional distress claim. ECF No. 97-4 at 187: 7-9 (Hardin testifying: "Well, I unexpectedly lost my job. Was that depressing and of concern to me? Absolutely.").[2] Hardin does not plan to prove her claims through expert witnesses. There is no treating psychologist or psychiatrist to cross-examine or rebut. Hardin

---

[2] Defendants submitted only a brief excerpt of Hardin's deposition, so the Court does not know if there is also testimony that she was distressed by the alleged defamation. *See* ECF No. 72 at 9 (holding that Hardin's IIED claim cannot be based on personnel management activity, but can be based on defamation). Even if so, that would not change the analysis for purposes of this discovery order.

4

does claim ongoing depression, ECF No. 97-4 at 189:14-18, but that is the only factor in favor of good cause.

As for the relevance of the desired materials, consider the mental exam the Defendants want Hardin to undergo. They propose that a professor at the UCLA School of Medicine examine Hardin for six to eight hours and administer a battery of tests: the Minnesota Multiphasic Personality Inventory-2, Hamilton Depression and Anxiety Tests, Personality Assessment Inventory, Exner Rorshach Inkblot Test, Trauma Symptom Inventory, Detailed Assessment of Posttraumatic Stress, Dissociative Experiences Scale, Thematic Apperception Test, MCMI, Structural Interview of Reported Symptoms, Victoria System Validity Test, BDI, BAI, Intelligence Quotient, and TOMM. ECF No. 96 at 10. They also propose "a detailed clinical interview" of sweeping scope. *Id*. at 9-10. All this for a plaintiff who testified she was depressed about being fired. This proposed mental exam is out of proportion to the emotional distress actually at issue and would not be a "discriminating application" of Rule 35. *Schlagenhauf*, 379 U.S. at 118.

There are no "specific facts," *Gavin*, 291 F.R.D. at 165, indicating that Hardin's emotional distress claim is anything more than her testimony that the Defendants' alleged actions upset her. There is therefore no "good cause" for a mental exam under Rule 35.

Defendants' motion for a mental examination is **DENIED**.

**B.     Mental Health Records**

Defendants also seek an order compelling Hardin to (1) produce all current and past mental health records going back to January 2005 in her possession for any of the 18 types of emotional distress listed in her initial disclosures, (2) identify her mental healthcare providers dating back to January 2005 that she saw for any of these 18 conditions (so that Defendants can serve subpoenas on them), (3) authorize the release of these treatment records, and (4) answer questions at deposition concerning these items.

Defendants' arguments take as a given that this discovery is relevant and proportional and instead focus only on privilege and waiver. However, the Court disagrees. It is true that if all you looked at were the allegations in the SAC and the enumerated types of emotional distress in

Hardin's initial disclosures, you would think this case involves a significant claim for emotional distress. The prayer for relief in the SAC seeks compensation for *hospitalization costs* in a case that does not involve physical injury. Talk about emotional distress! And then her initial disclosures listed 19 categories of damages, 18 of which are related to emotional distress. Viewing only the SAC and the initial disclosures – and ignoring Hardin's written discovery responses and deposition testimony – it could look like emotional distress is a significant, perhaps even predominant, part of this case.

Hardin's incautious pleading brought this motion on herself. Her discovery responses make clear that she never sought or received treatment, and she dealt with her distress by talking with her family and taking long walks. Her deposition excerpt states that she was depressed about being unexpectedly fired – as many people would be. This run-of-the-mill claim in no way justifies discovery into a decade and a half of her mental health records. Indeed, it does not justify any more discovery than has already taken place. The Court need not reach any issues of privilege or waiver[3] because it finds that Defendants' request fails the standards of relevance and proportionality.

Defendants' request for mental health records is **DENIED**.

**C. Former Employment Records**

Defendants subpoenaed Hardin's previous two employers, Antelope Valley Hospital and Community Regional Medical Center. The subpoenas asked for:

> Any and all DOCUMENTS relating to the employment of ELLEN L. HARDIN (date of birth: August 7, 1952) including but not limited to employment application, employment contracts, separation or severance agreements, employee resumes, personnel records and memoranda, compensation records, payroll records, attendance records, disciplinary actions, performance reviews, merit reviews, medical records, accident reports, benefit records, training records, worker's compensation claims and complaints, labor complaints to employer, labor complaints to any governmental agencies, and employer's response(s) to any complaints by or caused by employee

---

[3] While vigorously disputing that Hardin's emotional distress claim is garden variety, Defendants do agree "that a mere garden variety emotional distress claim does not waive any privilege." ECF No. 101 at 9 (reply brief).

6

ECF Nos. 97-5 & 97-6. The date range of the subpoena was January 1, 2003 to January 1, 2007 for Antelope Valley, and January 1, 2007 to January 1, 2015 for Community Regional. ECF Nos. 97-5 & 97-6. So, these subpoenas reach back 16 years, even longer than the requests for mental health records.

Antelope Valley and Community Regional produced responsive documents, which both Hardin and Defendants have. Hardin has objected to the Defendants being able to use them pursuant to Federal Rule of Civil Procedure 45(e)(2)(B) on the ground that this violates her right to privacy.

As an initial matter, the Court acknowledges that on its face, Rule 45(e)(2)(B) is a procedure for protecting claims of privilege or work product, and privacy is technically neither. Nonetheless, since Hardin at least attempted to move to quash the subpoenas before Antelope Valley and Community Regional produced responsive documents, *see* ECF No. 60, the Court will treat her privacy objection as unwaived, as it did before. *See* ECF No. 80.

"To evaluate privacy objections under either federal or state law, the Court must balance the party's need for the information against the individual's privacy right in his or her employment files." *Tierno v. Rite Aid Corp.*, 2008 WL 3287035, *3 (N.D. Cal. July 31, 2008). "'In the context of discovery of confidential information in personnel files, even when such information is directly relevant to litigation, discovery will not be permitted until a balancing of the compelling need for discovery against the fundamental right of privacy determines that disclosure is appropriate.'" *Newell v. County of San Diego*, No. 12-1696, 2013 WL 1932915, *2 (S.D. Cal. May 8, 2013) (quoting *Liberty Mut. Ins. Co. v. Cal. Auto. Assigned Risk Plan*, 2012 WL 892188, *3 (N.D. Cal. March 14, 2012)).

Defendants offer four reasons why Hardin's former employment records are relevant. First, they contend the documents are relevant to her emotional distress claim and may show the existence of pre-existing conditions. Largely for reasons already discussed, the Court disagrees. Despite the allegations in the SAC and the description of Hardin's damages in her initial disclosures, her actual emotional distress claim is not substantial enough to warrant this discovery. Discovery has made clear that she is not claiming some diagnosed condition with medical

7

treatment – the kind of claim that could be undermined if evidence showed she had that condition for years and therefore it was not caused by the Defendants. Here, she is claiming she talked to her family and took long walks to deal with the distress she suffered from Defendants' conduct – a claim that would not be undermined if similar things happened after being fired from or mistreated at a previous job.

Second, Defendants argue that previous employment records may be relevant to impeach Hardin's credibility. During her deposition, she testified that her supervisor at Antelope Valley had harassed her and made her life difficult. She also testified that she successfully resolved HR complaints during her time at Community Regional. Defendants say that her employment records might "test her assertions, confirm the accuracy of her representations and purported achievements, and fill in the gaps and inconsistencies in her testimony." ECF No. 96 at 20. However, the Court disagrees that this is a worthwhile use of discovery. Hardin's testimony about whether her boss at her former job harassed her or whether she was diligent in resolving HR complaints when she worked somewhere else are collateral issues. Discovery into them is minimally relevant and not proportional to the needs of this case, which is about her job at MCDH.

Third, Defendants argue that discovery into her employment records may show that she performed inadequately at her previous jobs. How that is relevant to this case is unclear. Consider *EEOC v. Vista Unified School District*, 2008 WL 4937000 (S.D. Cal. Nov. 17, 2008), which Defendants cite. In that refusal-to-hire case, the defendant served sweeping subpoenas on the plaintiff's former employers, similar in scope to Defendants' subpoenas here. The court determined that most of what the subpoenas called for was irrelevant and issued a protective order narrowing their scope. *Id*. at *1-2. The one type of document the court allowed the subpoenas to proceed on was the plaintiff's performance evaluations at her prior jobs, reasoning that they "may be relevant for impeachment purposes, as well as to support Defendant's argument that its decision not to hire [plaintiff] was credible, non-discriminatory and non-pretextual." *Id*. at *2. In a refusal-to-hire case, the principal dispute is whether the defendant had good reasons not to hire the plaintiff, and performance evaluations from her prior employers could (depending on what

8

they said) confirm the defendant's determination that the plaintiff was not a good prospect for the job. In this case, however, MCDH did hire Hardin. She alleges she started her job there in September 2015, SAC ¶ 15, and was first put on leave in January 2017. *Id*. ¶ 46. Defendants are defending not a refusal to hire her in the first place, but the decision to fire her after she worked at the hospital for more than a year. Her conduct at MCDH is what is at issue in this case. The focus of discovery in this termination case should be on the reasons for the termination. Even if her previous employers also fired her for poor performance at those jobs, that doesn't constitute evidence of her performance at MCDH. Yes, if Hardin has been fired from three jobs in a row for performance reasons, Defendants could argue that she is simply a terrible employee. But since there is a meaningful period of employment with MCDH, the focus of the litigation is and should be on what happened during that time. Rule 26's proportionality requirement is inconsistent with venturing into Hardin's performance at prior jobs, whose relevance is too attenuated to justify the broad discovery Defendants seek.

Fourth, Defendants contend that Hardin's prior employment records might contain information that would support an after-acquired evidence defense. They suggest resume fraud. "Under the 'after-acquired evidence' doctrine, an employee's remedies for wrongful discharge are precluded or limited if the employer later discovers evidence of wrongdoing that would have led to the employee's termination if the employer had known of the misconduct. In order to rely on the defense, the employer must prove by a preponderance of the evidence that it would have fired the employee for the misconduct." *Hukman v. Southwest Airlines*, 2019 WL 566451, *3 (S.D. Cal. Feb. 12, 2019). "However, the Supreme Court has cautioned against abuse of this defense and placed reliance on the courts, using the Federal Rules of Civil Procedure, to deter those abuses." *Awosika v. Target Corp.*, 2011 WL 13048452, *3 (W.D. Wash. May 26, 2011) (citing *McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352, 363 (1995)). "Lower courts have interpreted this to mean that discovery cannot be pursued in search of after-acquired evidence if there is no basis for believing that such evidence will be discovered." *Id*.

Here, Defendants do not point to anything in Hardin's resume or job application and provide a basis to think it is false. Her testimony about the references in her resume to her job

9

responsibilities at Community Regional consists of saying the representations were all true. ECF No. 97-7 at 167-69. As for her testimony about her supervisor at Antelope Valley and her unwillingness to answer questions about her departure from Community Regional, there is no explanation what part of her resume this rendered false. The Supreme Court has recognized "[t]he concern that employers might as a routine matter undertake extensive discovery into an employee's background," and has noted the power of the lower courts "to invoke the appropriate provisions of the Federal Rules of Civil Procedure [to] deter most abuses." *McKennon*, 513 U.S. at 363. The Court does so here.

None of the Defendants' proffered relevance arguments is sufficient to overcome Hardin's privacy objections. Indeed, even absent a privacy objection, the Court would not have found that the subpoenas to her former employers satisfy Rule 26's relevance and proportionality requirements. Defendants' motion to use Hardin's former employment records is **DENIED**.

**D.    Conclusion**

Defendants' motion is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Dated: April 4, 2019

THOMAS S. HIXSON
United States Magistrate Judge