UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN HARDIN,<br><br>    Plaintiff,<br><br>v.<br><br>MENDOCINO COAST DISTRICT HOSPITAL, et al.,<br><br>    Defendants. | Case No. 17-cv-05554-JST (TSH)<br><br>**ORDER ENFORCING RULE 30; REPORT AND RECOMMENDATION NOT TO APPOINT A SPECIAL MASTER**<br><br>Re: Dkt. Nos. 108, 109 |

The parties have filed a series of discovery letter briefs concerning (1) whether defense counsel may instruct witnesses not to answer based on the Brown Act, (2) whether the Court should order Plaintiff Ellen Hardin to be deposed for an additional day, (3) whether the Court should order Hardin to answer questions about her departures from prior employers, and (4) whether the Court should appoint a special master pursuant to Federal Rule of Civil Procedure 53 to act as a discovery referee to supervise depositions in this case. ECF Nos. 108, 109, 112. The first three questions come within the scope of the District Judge's discovery referral to the undersigned, *see* ECF No. 62, but the fourth one does not.

Having considered the deposition transcripts submitted by the parties, as well as the video excerpts provided by the Defendants, the undersigned concludes that the real problem with the depositions is that the defending attorneys have gone far outside the limited role they are supposed to play. They are rampantly coaching the witnesses and interrupting the examining attorney. Plaintiff's counsel's conduct is more egregious, but the truth is that both sides are doing it. This sort of misconduct could justify the appointment of a special master. However, the undersigned believes that before that cost is imposed on the parties, an appropriate interim step is to issue an order enforcing Federal Rule of Civil Procedure 30 and explaining to the parties in detail what that

means. Accordingly, the undersigned issues this discovery order combined with a report and recommendation that the District Judge not appoint a special master at this time.

## I. BACKGROUND

The dispute over whether to appoint a special master arises out of the conduct of outside counsel during depositions. The parties first brought this dispute to the Court's attention on January 14, 2019 in a telephone call during Plaintiff's deposition. Among other issues, Defendants sought a second day to depose her, complaining of Plaintiff's counsel's "lengthy objections and improper instructions." ECF No. 82. Plaintiff disagreed and argued that "it is Defendants' questions that are improper." *Id*. This sort of dispute is difficult to resolve on the phone, without the benefit of the transcript showing what actually happened during the deposition, so the Court ordered the parties to proceed with the first day of Plaintiff's deposition, meet and confer concerning whether a second day was appropriate, then file a discovery letter brief if they could not resolve that dispute. The Court directed the parties to provide the deposition transcript in that event. *Id*.

Three days later the parties were back on the phone during the deposition of Defendant Bob Edwards. Plaintiff's counsel complained that Defense counsel was "engaging in a variety of inappropriate tactics, such as coaching the witness, improperly instructing the witness not to answer, walking out of the deposition, interrupting her questions, and so on." ECF No. 85. "Defense counsel says none of that is true, and to the contrary, Plaintiff's counsel is the one causing problems." *Id*. The Court "admonishe[d] the parties to conduct depositions professionally," explaining that "[d]iscovery disputes like this one are in neither side's interest, and the parties should not need judicial supervision to conduct ordinary fact depositions." *Id*. The Court stated that if the parties were unable to resolve their dispute, "they may file a joint letter brief and provide the transcript and video of the deposition" and "advised the parties that if disputes like this persist with the depositions in this case, the Court may have to consider other options, such as ordering that depositions take place at the courthouse." *Id*.

The parties have since filed letter briefs, although none of them were joint. They have placed several hundred pages of deposition testimony before the Court. Defendants also

2

submitted video excerpts. The Court has reviewed all these materials. Although there were some occasions in which the questioning attorney improperly interrupted a witness or committed other types of misconduct such as arguably being condescending to opposing counsel and arguing with the videographer, the core of the problem is the attorneys defending the depositions. The defending attorneys for both sides have given lengthy speaking objections and improperly coached their witnesses. Plaintiff's counsel is the worse offender, but both sides are out of line.

**A.     Plaintiff's Counsel's Conduct**

Let's start with Plaintiff's deposition. There are whole sections of this deposition that consist of Plaintiff's counsel making long speaking objections and arguing with Defendants' counsel. Consider page 130, line 25 to page 135, line 16:

> Did you observe him communicating with or treating males -- any males in the workplace in a similar way that you felt he was communicating with and treating you?
>
> MS. WHITE: Relevance. It's so far afield. And it's – it's just – it's not directly relevant to this case as at all. I've given you some leeway to ask her questions about it. But, I mean, counsel, if you don't curb some of these questions, I'm going to instruct her not no answer because it's not reasonably calculated to lead to discovery of admissible evidence.
>
> She's already testified that she didn't believe it was gender or age related. I don't really know -- and it seems like you're soliciting improper character evidence. So it's – it's –
>
> What – what's your angle here in terms of why you're invading her rights to privacy as to a prior job that has nothing to do with the one at issue?
>
> And if we do have this call with the judge about discovery, I'm going to bring this up because it's now 2:45. We've been here since 10:00 a.m. And you're claiming you need additional time. I'm assuming that's what your allegation's going to be. But you've yet to ask her questions about anything that's directly relevant to the lawsuit and her employment with Mendocino.
>
> And you've spent an entire four to five hours going over her CV which you clearly have a copy of in your file.
>
> So I will vigorously object any request that you have that you have not completed Miss Hardin's deposition because you're squandering your time.
>
> MR. ALFORD:· Well, I object to the speaking objections which, in themselves, are consuming a great deal of time. And I think that

3

proper approach is for you simply to state the nature of your objection and instruct or not instruct her to answer, and we'll move on. That will make things go faster, but I'm not going to argue with you.

Q You may answer the question.

MS. WHITE:· What was the question, again?

MR. ALFORD: I'll – I'll withdraw it and ask a new question. I think that will speed things up a little. I'm really trying to move along as quickly as we can.

Q Did you ever observe Mr. Sullivan communicating with males in the workplace in the same inappropriate way that you say he communicated with you?

MS. WHITE: It's been asked and answered already.

MR. ALFORD: It's been asked, not answered.

MS. WHITE: Can you mark the record?

(The record is marked.)

THE WITNESS: What does that mean.

Can you mark the record -- I don't understand.

MS. WHITE: No. That's just for my purposes.

THE WITNESS: Oh. Oh, okay. I'm sorry. I -- sorry. I didn't know what was going on.

MS. WHITE: But the question has been asked and answered already, at least twice.

THE WITNESS: Can you ask your question again?

MR. ALFORD: Sure.

THE WITNESS: There's been so much going -- I'm losing my ability to track with the question.

MR. ALFORD: Yes. Yes. Yes. I will reask it.

Q Did you ever observe Mr. Sullivan communicating with males in the workplace, men, in the same inappropriate sort of way that you told us he communicated with you?

A I don't recall.

Q Okay. And, in part, because of Mr. Sullivan's conduct, you went on more than a year-long leave of absence from Antelope, correct?

A I indicated it was –

        MS. WHITE: Hang on one second.

        Can I have the question read back?

        MR. ALFORD: I'll re – I'll just withdraw it and state it again. I think that will make things go faster.

        MS. WHITE: The record is going to be so confusing with you withdrawing questions and restating them again because you may not be restating the question correctly. But I – I've never had anyone engage in this type of conduct where they refuse to allow the reporter to read the question back. But okay.

        Go ahead and restate it.

        MR. ALFORD: I'm not refusing to allow the reporter to read it back. I'm suggesting an alternate way to make things move faster.
If you'd like the reporter to read back, she'll read it back. I was just suggesting that I withdraw it and ask a new one to expedite things.

        (Testimony read as requested.)

        MS. WHITE: Answer?

        MR. ALFORD: I believe that she asked for a different question, a more recent question to be read back about –

        Q The question was, in part, because of Mr. Sullivan's conduct toward you, you found it necessary to take more than a year-long leave of absence from your employment, correct?

        That's the question.

        MS. WHITE: So this is -- was the topic of the motion to quash that we were in court on -- I believe it was, like, a week and a half or two weeks ago -- involving some of Miss Hardin's employment records. And the judge has yet to make a decision about those records because we need to provide objections to the court.

        I do not believe that things pertaining to her medical records that -- that were improperly obtained from a prior employer should be the subject of this inquiry, particularly where the court is yet to decide about those issues. And so for this -- that reason, I'm instructing her not to answer.

        I've given a lot of leeway in terms of questions about whether she's brought prior claims, which I still don't think they're relevant, let alone, directly relevant. So I'm instructing her not to answer.

This is simply incredible. There's no other word for it. In nearly five pages of transcript, the witness answered only one question because of her counsel's improper lengthy speeches and repeated interruptions. And there were similar passages throughout the deposition. *See, e.g.*, pages 149:18-156:01, 177:20-179:19, 181:20-185:14, 187:19-189:13, 227:16-229:12.

Another problem was Plaintiff's counsel coaching the witness, which happened repeatedly. Consider pages 333:15-335:07:

> Q I said, isn't it true that Mr. Edwards worked with you and Mr. Sturgeon to try to help you -- the two of you communicate better with one another?
>
> MS. WHITE: That's been asked and answered already. Please mark the record.
>
> (The record is marked.)
>
> MS. WHITE: And it's compound. She stated she doesn't know about what -- at what -- he said to Sturgeon.
>
> MR. ALFORD: It's been –
>
> MS. WHITE: You have to remember, sir, your questions and the answers, otherwise you are creating the circumstance to make my client come back here for additional time.
>
> MR. ALFORD: It's been asked but not answered.
>
> MS. WHITE: Can you go back and read the record of his very question he asked the second time and her response?
>
> (Court reporter interruption.)
>
> MS. WHITE: It was the same exact question, and she provided an answer.
>
> (Testimony read as requested.)
>
> MS. WHITE: After that –
>
> THE COURT REPORTER: The next question.
>
> (Testimony read as requested.)
>
> MS. WHITE: After.
>
> (Testimony read as requested.)
>
> MS. WHITE: Yes.
>
> (Testimony read as requested.)
>
> MS. WHITE: Answer?
>
> (Testimony read as requested.)
>
> MR. ALFORD: I –
>
> MS. WHITE: That was it.

6

> MR. ALFORD: I –
>
> THE REPORTER: Do you want the rest of it?
>
> MS. WHITE: Yeah.
>
> (Testimony read as requested.)
>
> MS. WHITE: The first part of that response she answered your question, and you asked her the very same question again.
>
> MR ALFORD: I disagree.
>
> MS WHITE: So its been asked and answered.
>
> MR. ALFORD: Let's – let's move on.

Again we see Plaintiff's counsel derailing the deposition with unwarranted interruptions. But in addition, she was now coaching the witness. There is nothing wrong with an attorney asking the same question multiple times in a deposition. It is appropriate, for example, if the witness has not answered it, or not answered part of it. But it's also appropriate to ferret out evasions, half-truths and misunderstandings. Sometimes witnesses do not want to directly answer a question, but when they are forced to evade a question or give an implausible answer over and over again, they can see they're beginning to look ridiculous, so they stop fighting and give the real answer. There is a point at which repetition can become harassing, yes, but a certain amount of it is just a normal part of cross-examination. When this happens, it is not appropriate for the defending attorney to tell the witness what her answer should be, or even worse, to demand that a prior answer be read back. That's coaching, and it's not allowed. Plaintiff's counsel did this repeatedly in the deposition. *See also* pages, 126:14-128:18, 347:11-350:3.

The above are just examples of Plaintiff's counsel's misconduct during Plaintiff's deposition, intended to convey the flavor of what the deposition was like.

**B.    Defendants' Counsel's Conduct**

Defendants' counsel also committed repeated misconduct during the depositions he defended. Let's consider some examples from the deposition of Bob Edwards. Pages 70:17-73:23:

> Q   Why is it the safety and compliance manual indicates that a

7

1 compliance committee should exist, but it doesn't exist at the hospital?

2 MR. ALFORD: Asked and answered. Do you have anything to add to your prior answer?

3 THE WITNESS: No.

4 MS. WHITE: I didn't get a response.

5 THE WITNESS: No. I have nothing to add.

6 Q (By Ms. White) Well, you didn't respond as to why one doesn't exist.

7 MR. ALFORD: Argumentative.

8 Do you have anything to add to your answer?

9 THE WITNESS: No, I don't.

10 Q (By Ms. White) Can you answer my question, please?

11 MR. ALFORD: No. He did.

12 MS. WHITE: No. I didn't get an answer, and I want an answer to my question.

13 Q (By Ms. White) Why is it that the safety and compliance manual indicates that a compliance committee should exist for the hospital, but one does not exist?

14 MR. ALFORD: Madam Reporter, could you read back the answer?

15 MS. WHITE: No. My question is pending, sir. And I want my question answered. Please do not interrupt.

16 MR. ALFORD: For the record, I think that your demeanor is unprofessional and inappropriate. And if it continues, we're going to suspend the deposition.

17 So, Madam Reporter, could you please read back the answer to make sure the witness has nothing further to add to it?

18 MS. WHITE: No. This is a different question. And I want my question answered.

19 Please mark the record.

20 (The record is marked.)

21 MR. ALFORD: Don't answer the question again. This is abusive. Your demeanor is unprofessional, intimidating, and inappropriate. And we're going to leave if it continues. I'm just giving you a head's up. Okay?

8

|   |   |
|---|---|
| 1 | I don't want that to happen. I want this to be productive and professional, but that takes two of us. Please continue. |
| 2 | MS. WHITE: Sir, no one is being inappropriate other than you. You're being very obstreperous. There's no basis for you to instruct this witness not to answer. You know fully well under the Stewart versus Colonial case, that you cannot instruct a witness not to answer the question. |
| 3 | |
| 4 | |
| 5 | Please read my question back. |
| 6 | And I want my question answered. If not, I'm going to move to compel it and request sanctions and attorney's fees against you and your client. |
| 7 | |
| 8 | Can I have the question read back? |
| 9 | MR. ALFORD: And the answer. |
| 10 | MS. WHITE: No. My last question didn't get answered. |
| 11 | MR. ALFORD: Listen, you cannot dictate what parts of the record are read back or not. |
| 12 | |
| 13 | Madam Reporter, I'm sorry to put you in this position. It's not appropriate. But please read back the question and then the answer that was given by the witness, other than just simply the word no, the full answer that came before that. |
| 14 | |
| 15 | It's not appropriate to put the court reporter in this position. |
| 16 | MS. WHITE: Will you stop talking and wasting everyone's time. |
| 17 | I'll ask you a new question. |
| 18 | Q (By Ms. White) To your knowledge – |
| 19 | MR. ALFORD: No. I asked for the record to be read back. |
| 20 | MS. WHITE: I withdrew it. |
| 21 | MR. ALFORD: I asked for the record to be read back. |
| 22 | MS. WHITE: I withdrew it. Why are you holding the deposition hostage? |
| 23 | |
| 24 | MR. ALFORD: All right. All right. If you're going to ask a question unrelated to that one, then that's fine. We can move on. |

This too is incredible. It is all the more so because *the Defendants* submitted this passage as supposed evidence that Plaintiff's counsel engaged in misconduct. Yet here, Defendants' counsel was coaching his witness, interrupting Plaintiff's counsel and telling his client to answer a different question than the one asked, and demanding that prior testimony be read back. It was in

9

some ways the mirror image of how Plaintiff's counsel coached her witness when questions were asked multiple times, except it was worse because Defendants' counsel improperly instructed the witness not to answer, lectured Plaintiff's counsel about being abusive when he was the one engaged in discovery abuse, and then threatened to walk out of the deposition if Plaintiff's counsel continued with her questioning. He did similar things elsewhere in the Edwards deposition, interrupting, threatening to walk out, making comments about the supposedly angry tone of Plaintiff's counsel's questions that are not borne out by the video, calling her unprofessional even as he was committing discovery abuse, coaching his witness, and making long speaking objections. *See* pages 44:17-46:16, 194:22-196:7, 220:17-223:18, 245:3-249:18, 419:17-422:5.

Here is another example, from pages 212:3-213:21 of the Edwards depo:

> Q Are there any magical words that have to be used by an employee of the hospital in order to trigger, to the hospital, that a discrimination complaint is being made?
>
> MR. ALFORD: Objection. Vague and ambiguous by "magical words." Incomplete hypothetical. And it's argumentative.
>
> Do you understand the question?
>
> THE WITNESS: I do. The truth is, there has to be a story told about what's gone on. And that sometimes includes things like who, what, when, why.
>
> Q (By Ms. White) Are there any special words that must be used by a complainant to trigger, to the hospital, that a discrimination complaint is being made?
>
> MR. ALFORD: Asked and answered.
>
> Do you have anything to add to your prior answer?
>
> THE WITNESS: That's my – I've already answered it.
>
> Q (By Ms. White) No, I didn't get the answer. That's a new question.
>
> MS. WHITE Can you ask -- move to strike as nonresponsive. Can you ask him my question?
>
> MR. ALFORD: Do you have anything to add to what you've had already said?
>
> THE WITNESS: I do not.
>
> MS. WHITE: Sir, do not interrupt my deposition. If you have a question to ask, you know the proper procedure. You ask it at the

10

end. Stop interrupting.

MR. ALFORD: Your voice is raised, and your tone is unprofessional. I'm going to instruct him not to answer the question again.

MS. WHITE: No. There's no basis to instruct the witness not to answer.

Read my question back. And I need an answer to my question.

(The reporter reads back the question.)

MR. ALFORD: It's been asked and answered.

Answer it one more time.

THE WITNESS: There are no special words, just descriptive of a story which describes who, what, when, and why so it can be looked into.

This was an unfortunate performance by Defendants' counsel. Plaintiff's counsel asked a legitimate question. The witness said he understood it, but then didn't answer it. Defendants' counsel then made a meritless objection that the question had been answered already, repeatedly coached the witness not to actually answer the question, accused Plaintiff's counsel of having an unprofessional tone, threatened to make a baseless instruction not to answer, and made another baseless objection. So far as the video discloses, Plaintiff's counsel's voice was not unduly raised, and her tone reflected only annoyance at Defendants' counsel's conduct.

Again, these are just examples of conduct that was common in the depositions.

## II. LEGAL STANDARD

"[A] court may appoint a master only to," among other things, "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. Proc. 53(a)(1)(C). "A pretrial master should be appointed only when the need is clear." Adv. Comm. Notes to 2003 Amendments to Fed. R. Civ. P. 53(a)(1).

The Manual for Complex Litigation discusses the role a special master may play when there is rampant discovery abuse in depositions, as there is here:

> Where abuses are rampant, the court might require that depositions be videotaped for judicial review or require counsel expeditiously to deliver a copy of the transcript of each deposition for judicial review.

> Alternatively, the court could direct that one or more depositions be supervised in person by a judicial officer or special master. The judge or special master may need to be present only briefly, setting the tone and making a few early rulings, and then remain on call. Even where a special master exercises continuous oversight, avoiding disputes and satellite litigation may justify the cost. Some judges have required that depositions be taken in court to allow periodic monitoring.

Federal Judicial Center, Manual for Complex Litigation (4th ed. 2004) § 11.456.

The appointment of a special master to oversee depositions can be appropriate when there are "numerous ongoing and continuing disputes that have arisen at nearly every deposition," where there have been multiple "informal telephone . . . and letter requests from counsel for the parties requesting judicial intervention," and when there is a "strained relationship between such counsel" and an "inability to cooperate with each other at depositions . . ." *Jadwin v. Abraham*, No. 1:07-cv-00026, 2008 WL 4057921, *7 (E.D. Cal. Aug 22, 2008).

### III. DISCUSSION

It is not yet clear that supervising the depositions in this matter "cannot be effectively and timely addressed by an available district judge or magistrate judge of this district." Fed. R. Civ. P. 53(a)(1)(C). To be sure, this Court has already had telephone calls with the parties during two of these depositions and has already admonished them to conduct depositions professionally. ECF Nos. 82, 85. That had no effect. The transcripts and video excerpts show a breakdown in cooperation between counsel.

But they also show that both sides appear to have a misunderstanding about what is permissible in defending a deposition. The lawyers committing discovery abuse by coaching the witness and constantly interrupting the examining attorney seem strangely self-righteous about their conduct. An explanation of what a defending attorney is supposed to do in a deposition is therefore in order.

Rule 30 contemplates a limited role for attorneys defending a deposition. They may make a "nonargumentative and nonsuggestive" objection to a question. Fed. R. Civ. P. 30(c)(2). They may "instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id*. They may "move to terminate or limit" the deposition "on the ground that it is being conducted in bad faith or in a

12

manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. Proc. 30(d)(3)(A). And in connection with so moving, the defending attorney may demand the suspension of the deposition. *Id*.

By convention, there are a few more things defending attorneys may do that are not expressly mentioned in Rule 30. They can do redirect following the completion of the examining attorney's questioning. They can ask to take a break every hour or so, and provided that no question is pending, that request should be agreed to. They can suggest a lunch break around noon. They can ask the videographer how much time has gone by on the record. And then when the seven hours are up, they can declare the deposition over, take their witness and leave.

And that's it. They are not allowed to make long, argumentative objections, or reframe the question for the witness, or make speeches about the irrelevance of the examining attorney's questions, or get into arguments with the other side. None of that is allowed.

The parties in this case are in rampant violation of these rules. As the Court noted above, these abuses are mostly being committed by the attorneys defending the depositions. It is true that on some occasions when she was taking depositions, Plaintiff's counsel argued with the court reporter or videographer, gave long speeches, and got into arguments she shouldn't have. But that conduct is self-defeating: every minute she spends doing those things is a minute she is not questioning the witness. The real problem is when the defending attorney misbehaves. Coaching the witness, interrupting, giving long speeches, arguing with the examining attorney, and other misconduct, prejudices the other side's ability to depose the witness. It substantively interferes with the whole point of a deposition. It makes the discovery process valueless because it prevents the other side from building its case.

The Court hereby issues an order enforcing Rule 30.[1] This order, and the sanctions the Court will issue for violations of it, should be sufficient to resolve the problem. Accordingly, the

---

[1] This order is somewhat stricter than Rule 30 as it is also tailored to remedy the misconduct that has occurred in this case. For example, Rule 30 allows a defending attorney to say "objection: vague" instead of just "object to form." However, the defending attorneys in this case have been so abusive with their objections that if the Court allowed them to briefly state each and every objection they had to each and every question, they would abuse that permission.

13

undersigned **RECOMMENDS** against the appointment of a special master at this time.

The Court **ORDERS** as follows:

1. During a deposition in this action, the defending attorney may:

    (A) In response to a question, state any or all of the following, if legally appropriate: "Object to form," "I instruct you not to answer," or "Don't include privileged information in your answer";

    (B) After each hour of testimony, request a break, which the examining attorney shall agree to if no question is pending;

    (C) Around noon, request a lunch break, which the examining attorney shall agree to if no question is pending;

    (D) Starting in the afternoon, and no more than once per hour, ask "Mr./Ms. videographer, how much record time has this deposition lasted?";

    (E) When it appears that seven hours of record time has passed, ask "Mr./Ms. videographer, has this deposition lasted seven hours of record time?";

    (F) Upon receiving confirmation that the deposition has lasted seven hours, state "This deposition is over. We are leaving.";

    (G) State, if warranted, "I move to terminate [or limit] this deposition under Rule 30(d)(3)," and at his or her option, "I demand that this deposition be suspended for the time necessary to obtain an order."

2. The defending attorney may say essentially nothing else during the deposition. The word "essentially" allows for only brief statements concerning the logistics of the deposition, such as "Can you please hand me a copy of the exhibit?" or "My real time monitor stopped working" or the like.

3. Paragraphs 1 and 2 apply to the defending attorney in his or her capacity as a defending attorney. When he or she does a redirect exam, the roles are reversed, and paragraphs 1 and 2 apply to the attorney who was previously the examining attorney.

4. Ellen Hardin and Bob Edwards shall be redeposed. These retaken depositions shall not count toward either side's deposition limit.

5. This order applies to the parties and to any non-parties that are subpoenaed for deposition in this matter.

**IT IS SO ORDERED AND RECOMMENDED.**

Dated: April 25, 2019

_____
THOMAS S. HIXSON
United States Magistrate Judge