UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN HARDIN, <br>         Plaintiff, <br> v. <br> MENDOCINO COAST DISTRICT HOSPITAL, et al., <br>         Defendants. | Case No. 17-cv-05554-JST (TSH) <br><br> **DISCOVERY ORDER** <br> Re: Dkt. Nos. 185, 191 |

The Court has nine discovery letter briefs before it, with supporting declarations that attach hundreds of pages of exhibits. ECF Nos. 185, 191. The Court has reviewed these materials thoroughly. In the interest of providing the parties a prompt resolution of these discovery disputes, this written order addresses only the main points. It does not discuss every argument the parties made or the dozens of cases cited by both sides. That would turn this order into a treatise and delay resolution of these disputes.

**I.    DISCOVERY LETTER NO. 1**

Plaintiff Ellen Hardin moves to compel Bob Edwards, Steve Lund and Wade Sturgeon's personnel/board files. Her best argument is that the files might show prior instances of discriminatory or retaliatory conduct, which would tend to support her claims and tend to negate Defendants' proffered nondiscriminatory reasons for her termination. Defendants don't argue that Sturgeon's file is irrelevant. They do say that Lund's is irrelevant because Hardin's only remaining claim against him is a First Amendment retaliation claim. However, Hardin is also suing MCDH for discrimination and retaliation, and her allegations about Lund's involvement are incorporated by reference into those causes of action. He is, after all, the President of the Board of Directors, and if his file is chock full of complaints about discrimination and retaliation, Hardin's

claim that she too was a victim is more credible. As to Edwards, Defendants contend that Hardin testified in her deposition that she did not personally witness much harassment by him. The idea is that there's no reason to think that he is a serial harasser, so there's no justification to look through his file. However, that argument rests on the logical fallacy that Hardin must prove Edwards is a serial harasser before she may take discovery into whether that is true. Also, what's relevant is not just discrimination or harassment by these three Defendants, but also information in their files about how they may have responded to misconduct by others, since Hardin also alleges retaliation.

However, Defendants are right that this request is overbroad. Personnel files include things like leave of absence requests, offer letters, pay history, emergency contact information, W-4s, direct deposit information, and so on, which are both irrelevant and invasive of privacy. In a footnote, Defendants state that "the only potentially relevant documents from the personnel/board files would be complaints of harassment or retaliation based on age and/or gender by MCDH employees and any disciplinary action taken." As you'll see below, the Court largely adopts that proposal.

Defendants argue that prior instances of discrimination are admissible at trial only if they are substantially similar to Hardin's. They also assert that any prior complaints would be excludable under Federal Rule of Evidence 403 because their probative value would be significantly outweighed by the danger of unfair prejudice. However, this is a motion to compel, not a trial. Until evidence of prior instances of discrimination is produced in discovery, neither the parties nor the Court can make a factual assessment whether those instances are or are not substantially similar to the facts in this case, or how their relevance compares to the danger of unfair prejudice.

Accordingly, Hardin's motion to compel is **GRANTED IN PART** and **DENIED IN PART**. The Court **ORDERS** Defendants to produce documents from Edwards, Lund and Sturgeon's personnel/board files concerning complaints of harassment or retaliation based on age

and/or gender by MCDH officers or employees and any action taken in response.[1]

## II. DISCOVERY LETTER NO. 2

Hardin moves to compel MCDH to produce any excess insurance policies. MCDH objects that Hardin did not meet and confer as required by the undersigned's Discovery Standing Order. MCDH also states that it does not believe any excess policy exists but is awaiting final confirmation and will produce any excess policy if one exists.

Hardin did not comply with the Discovery Standing Order. It states that "counsel for each party shall meet and confer in person, or, if counsel are located outside the Bay Area, by telephone, to attempt to resolve their dispute informally. A mere exchange of letters, e-mails, telephone calls or facsimile transmissions does not satisfy the meet and confer requirement." A discovery letter brief must contain an attestation on the cover page "that the parties met and conferred in person (or by telephone if outside the Bay Area) in good faith to resolve their dispute(s) prior to filing the letter . . ."

Here, Hardin's meet and confer efforts consisted of a 170-page meet and confer letter and a 21-page meet and confer letter, *see* ECF No. 185-18, Exs. A & B, but there was no telephone call between counsel, and Hardin's letter does not attest that a phone call took place. Further, given MCDH's response that it will produce any excess policy if there is one, this seems like the kind of dispute that could easily have been resolved in the required phone call. Hardin's motion to compel is therefore **DENIED**.

## III. DISCOVERY LETTER NO. 3

This letter brief has some red flags on it. Hardin argues that David Reis, John Ruprecht, Linnea Orsi, Rhonda Wilson, WIPLI, and Judy Hoagland[2] have relevant knowledge and should be deposed. Defendants disagree, but they also say that Hardin has used up her ten depositions, so she would need to move under Federal Rule of Civil Procedure 30(a)(2)(A) for leave to take more.

---

[1] Hardin's letter brief also takes issue with Defendants' ESI production. However, it is evident that the parties have not meaningfully met and conferred on this issue, and the Court declines to address it.
[2] The letter brief also refers to Lynn Bradley and D'Anne Gleicher. However, as Hardin's counsel clarified during the August 23 telephonic hearing, those witnesses have been deposed.

Hardin does so move – but not in the letter brief. Rather, on the same day that she filed the letter brief, she also filed a motion to be allowed seven additional fact witness depositions. ECF No. 187. In violation of Civil Local Rule 7-2(a), she noticed the motion for a hearing 22 days later, but ignoring that problem for the moment, Defendants' opposition is due on August 28 (*see* Civil Local Rule 7-3(a)), and fact discovery closes two days later. ECF No. 159. Assuming for the sake of argument that Hardin's motion for more depositions is so meritorious that the Court can dispense with a hearing and the reply brief, and upon reading the Defendants' opposition immediately after it is filed can see instantly that all of their arguments are wrong, and thus grant Hardin's motion on the spot . . . there is no way she could notice and then take these additional depositions by the close of fact discovery. Aware of the problem, Hardin has moved Judge Tigar for an order extending the fact discovery cutoff to October 15, 2019. ECF No. 208.

The Court tables consideration of discovery letter No. 3 pending Judge Tigar's ruling on Hardin's motion to extend the case schedule.

## IV. DISCOVERY LETTER NO. 4

Defendants state that Gayl Moon found two informal minutes from closed board sessions on her computer, and they will produce those to Hardin. Beyond that, Hardin's letter brief does not establish that Defendants have failed to produce any relevant handwritten notes, audio recordings, or typewritten notes that still exist concerning board meetings. Defendants do acknowledge Moon's practice of shredding her handwritten notes and deleting audio recordings of board meetings.

There is accordingly nothing to compel Defendants to produce, and Hardin's motion is **DENIED**. This denial is without prejudice to Hardin's ability to file a motion for sanctions. The undersigned's Discovery Standing Order provides that "[n]o motion for sanctions may be filed until after the moving party has complied with the requirements above" concerning joint discovery letter briefs. "Motions for sanctions shall be filed separately, pursuant to Federal Rule 37 and Civil Local Rules 7 and 37-4." Hardin has exhausted the letter brief requirement and may now move for sanctions under Federal Rule 37 and Civil Local Rules 7 and 37-4.

## V. DISCOVERY LETTERS NOS. 5 AND 6

The Court **ORDERS** Defendants to provide to the Court for its in camera review the unredacted Gleicher Report together with all exhibits. The Court will defer ruling on the merits of this motion pending a review of those materials.

## VI. DISCOVERY LETTER NO. 7

As with discovery letter No. 2, Hardin did not meet and confer as required by the undersigned's Discovery Standing Order. This failure to meet and confer has resulted in letter briefs that are completely disconnected from each other. Hardin's letter brief is entirely about the requirements for a privilege log to support a claim of attorney-client privilege over a document, and she argues that Defendants' 11-page log lacks the required information. But Defendants say that about 90% of the items on their log are actually privacy redactions for things like Social Security numbers or an individual's name, and since all they did was redact that particular bit of information (as opposed to withholding the document as a whole), they say the document itself enables the reader to see the basis for the redaction.[3] For the most part, the parties are therefore talking about different things. This is what meeting and conferring is supposed to prevent.

As for the small number of log entries that Defendants say are for attorney-client privilege, it's impossible to evaluate the adequacy of a privilege log without looking at it, and neither side has provided it.

Hardin's motion is **DENIED** without prejudice.

## VII. DISCOVERY LETTER NO. 8

Again, a meet and confer telephone call would have mooted this letter brief. MCDH says it did serve amended interrogatory responses as required by ECF No. 128 and provides the FedEx confirmation of the shipment. The missing Brown Act documents turn out to be a typo in a cover letter. And Hardin is wrong that ECF No. 128 ordered Edwards, Lund and Sturgeon to amend their interrogatory responses. This wouldn't have been a long call.

Hardin's motion to compel is **DENIED**.

---

[3] Exhibits G and H to the White Declaration appear to be examples of this.

## VIII. DISCOVERY LETTER NO. 9

In this letter brief, Hardin challenges redactions Defendants made to some of their documents. The proper way to challenge a redaction is to put the document before the Court (or, if there are many redacted documents, a sample of them), along with the other side's redaction log, and then argue why the redaction is improper. Here, by contrast, Hardin for the most part does not put the documents before the Court, and it is sometimes unclear what her letter brief is referring to. Also, Hardin does not put the Defendants' redaction log before the Court, so the Court is unable to assess whether the proffered reasons for the redactions are legitimate. The Court discusses each category of documents below:

- "Leader performance check-in reports of Wade Sturgeon."

The Court does not know what documents this heading refers to. Having reviewed the voluminous exhibits attached to Hardin's counsel's declaration, the Court does not believe that any of them is a leader performance check-in report of Wade Sturgeon. In the second paragraph under this header, Hardin cross-references her letter brief concerning the Gleicher Report. Hardin did provide the redacted Gleicher Report as Exhibit D. In connection with discovery letters Nos. 5 and 6, the Court is ordering Defendants to provide the unredacted report and its exhibits for in camera review to address these redactions.

- "Leader performance check-in reports of Plaintiff Ellen Hardin."

As above, following a review of the submitted exhibits, the Court does not believe these were included. The letter brief cites deposition exhibits 354 and 355, but those do not appear to have been submitted.

- "Any and all correspondences and documents regarding closed session minutes pertaining to discrimination, harassment and/or hostile work environment complaints made by Hardin or other employees at MCDH."

For purposes of ruling on the propriety of redactions, this category is too vaguely defined. The Court needs to rule on particular documents, and the "any and all" formulation is problematic. It does appear, however, that the second Exhibit Y attached to the White Declaration (referred to in the letter brief as Exhibit Z) is an example of this category. Hardin's letter brief does not have

6

any substantive argument for why this document should not be redacted, other than a cross-reference to her other letter briefs. Defendants' letter brief is similar. Although Hardin's letter brief does not mention Exhibit M as being in this category, on the Court's review, Exhibit M does appear to be similar. The Court **ORDERS** the parties to file a joint letter brief by September 4, 2019 stating their respective positions on the redactions to Exhibit M and the second Exhibit Y and attaching an excerpt of Defendants' redaction log that pertains to these exhibits. Separately, the Court **ORDERS** Defendants to provide the Court with unredacted versions of these exhibits for in camera review by September 4, 2019.

- "Any and all correspondences between MCDH employees, specifically between Individual Defendants Bob Edwards, Steve Lund and Wade Sturgeon, pertaining to discrimination, harassment, and/or hostile work environment complaints made by Hardin or other employees at MCDH."

This category is also vaguely defined, and Hardin's letter brief does not list any examples that fall within this category.

- "Any and all correspondences from MCDH's legal counsels David Reis and John Ruprecht, pertaining to any investigation into discrimination, harassment, and/or hostile work environment complaints made by Hardin or other employees at MCDH."

This category has the same problems as the preceding category.

- "Pages 164 through 171 in deposition transcript of Bob Edwards, Volume 1, erroneously marked as 'confidential.'"

This is a challenge to a confidentiality designation, not to a redaction. Paragraph 6 of the Joint Stipulated Protective Order, ECF No. 66, governs such challenges. Like the undersigned's Discovery Standing Order, the Joint Stipulated Protective Order requires "voice to voice dialogue" as part of the required meet and confer process. *Id.* ¶ 6.2. There is no indication that took place here, or that any of the other procedures for challenging a confidentiality designation were followed. Also, process aside, Hardin did not provide these pages of Edwards' deposition to the Court. Exhibits O and P are excerpts from his depositions, but neither includes these pages.

In the letter brief, Hardin refers to Deposition Exhibit 96, which was apparently discussed

at pages 164-71 of Edwards' deposition. She did provide that to the Court (it's Exhibit I), but the exhibit itself does not have any redactions.

In sum, for each of the specific documents Hardin actually provided to the Court (the Gleicher Report, Exhibit M and the second Exhibit Y), the Court is ordering the Defendants to provide the unredacted copy for in camera review, and for Exhibit M and the second Exhibit Y, the Court is ordering supplemental briefing. For the remainder of this letter, Hardin's request is **DENIED** without prejudice because there is nothing in front of the Court to evaluate.

**IT IS SO ORDERED.**

Dated: August 26, 2019

THOMAS S. HIXSON
United States Magistrate Judge