UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN HARDIN,<br><br>        Plaintiff,<br><br>    v.<br><br>MENDOCINO COAST DISTRICT HOSPITAL, et al.,<br><br>        Defendants. | Case No. 17-cv-05554-JST (TSH)<br><br>**DISCOVERY ORDER (PUBLIC REDACTED VERSION OF ECF NO. 237)**<br><br>Re: Dkt. No. 186 |

Defendants have moved for reconsideration of a portion of the Court's April 4, 2019 discovery order, ECF No. 106, pursuant to Civil Local Rule 7-9(b)(2), arguing that new material facts have emerged that provide a basis for the Court to reconsider its order barring them from using documents produced by Antelope Valley Hospital and Community Regional Medical Center – Plaintiff Ellen Hardin's last two employers before she worked for Defendant Mendocino Coast District Hospital. They say the new facts are in two places: an April 29, 2019 settlement demand and Hardin's June 21, 2019 deposition. The Court considers each in turn.

Let's be realistic about what a settlement demand is. It's not a formal pleading that's binding on a party. It can't be admitted to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction. Fed. R. Evid. 408(a). It's just a demand that your opponent pay you something. It might not even be sincere. Often settlement demands are exaggerated – after all, if you're the plaintiff, you have to start out big because the only direction you can go in a negotiation is down. Still, to make a settlement demand at least somewhat credible, the plaintiff has to seek that much or more in the lawsuit. You wouldn't want to make a settlement demand in April and then in September (when expert reports are due, *see* ECF No. 159) serve a damages report that asks for *less* money because that would completely undercut your settlement demand. Normally, in fact, a plaintiff will seek *more* money

in the lawsuit than what the settlement demand is in order to show the defendant why settling is a good idea. So, recognizing that Hardin's April 29 settlement demand isn't binding on her in any way, as a matter of common sense, it is nonetheless useful as a statement of the minimum she is seeking by way of damages in this lawsuit.

Defendants point to three things in the settlement demand they say are new. First, they observe that Hardin is demanding millions of dollars for various emotional, economic and reputational harms. However, this isn't really new information, even if it is the first time that Hardin has explicitly said she is suing for millions of dollars. Look at the docket in this case! As of Tuesday, there were more than 230 filings. Although much of that is due to Defendants' filings, the way Hardin has litigated this case from the beginning makes sense only if she is trying to win millions of dollars. Defendants cannot credibly say they first learned this when they got her April settlement demand.

Second, Defendants observe that Hardin's settlement demand claims that she was defamed and her reputation was destroyed in the small world of public hospital administrators. But that isn't new either. The Second Amended Complaint alleges a defamation claim and specifically alleges harm to Hardin's professional reputation. ECF No. 50, ¶¶ 214-33. The settlement demand has more detail, but it's the sort of detail one would expect given the allegations in the SAC.

But the Defendants are on firmer ground with their third argument. On page 52 of her settlement demand, Hardin states that she is seeking no less than $1.2 million in economic losses. She explains this as being based on an assumption that she would have worked until she was at least 75 years old and that she was terminated just shy of her 65th birthday. So, this calculation assumes her economic losses average about $120,000 per year. To be clear, this doesn't necessarily have to be money she would have earned at MCDH had she remained employed there. It could also be money she would have earned at other employers had Defendants not defamed her and destroyed her reputation.

The notion that Hardin is seeking economic damages isn't new, of course. She said that in the Second Amended Complaint and in her initial disclosures. It's the improbable size of the economic losses that is new. Defendants say this is the first time she put forth a dollar number this

2

1   big, and Hardin does not deny that.

2   Now let's turn to the other source of alleged new material facts, Hardin's June deposition.
3   She testified that she resigned voluntarily from Community Regional Medical Center, stating that
4   she wanted a new challenge, a different place to work, and that management was going in a
5   different direction. She also testified that she resigned from Antelope Valley because she chose
6   not to return from a leave of absence. She testified that she did this for personal reasons, including
7   the long commute. This is new information because Hardin did not previously testify about her
8   reasons for leaving her former employers.

9   With this new information in mind, the Court must evaluate whether it justifies
10  Defendants' use of the documents produced by Community Regional and Antelope Valley over
11  Hardin's privacy objections. "To evaluate privacy objections under either federal or state law, the
12  Court must balance the party's need for the information against the individual's privacy right in
13  his or her employment files." *Tierno v. Rite Aid Corp.*, 2008 WL 3287035, *3 (N.D. Cal. July 31,
14  2008). "'In the context of discovery of confidential information in personnel files, even when
15  such information is directly relevant to litigation, discovery will not be permitted until a balancing
16  of the compelling need for discovery against the fundamental right of privacy determines that
17  disclosure is appropriate.'" *Newell v. Cty. of San Diego*, 2013 WL 1932915, *2 (S.D. Cal. May 8,
18  2013) (quoting *Liberty Mut. Ins. Co. v. Cal. Auto. Assigned Risk Plan*, 2012 WL 892188, *3 (N.D.
19  Cal. March 14, 2012)).

20  Performing this balancing test is difficult here because both sides brief this motion in an
21  all-or-nothing fashion with no discussion of any particular documents or how they might be
22  relevant or irrelevant. After performing in camera review, the Court makes the following
23  observations.

24  Let's start with Antelope Valley's documents. [REDACTED]
25  And then there is AVH153. Perhaps the hearsay-within-hearsay and Rule 403 issues will
26  prevent the trier of fact from ever seeing this document, but admissibility is different from
27  discoverability. [REDACTED]
28  On the other hand, a lot of the documents Antelope Valley produced just have no relevance

3

to anything. [REDACTED] Defendants have indiscriminately moved to use Hardin's entire employment file that Antelope Valley produced without making any effort to identify documents sufficiently relevant to this case that overriding Hardin's privacy objections would be justified.

Now let's turn to the documents produced by Community Regional. Again, some of the documents are relevant enough to override Hardin's privacy objections. [REDACTED]

[REDACTED][1]

But again, Defendants' motion is overbroad and seeks to use documents invasive of Hardin's privacy that have no relevance to this case. [REDACTED]

In summary, Hardin's deposition testimony paints a rosy picture of her employment history, and her settlement demand reflects optimistic views about her ability to hold down a high paying job for a decade. [REDACTED] Our adversarial system contemplates finding truth by allowing each side to present its best case. Here, denying this motion in its entirety would undermine the adversarial process by allowing only one side of the story to be told.

But at the same time, granting this motion in its entirety is unjustified. The act of filing this lawsuit does not deprive Hardin of all her privacy rights. That would impose too high a price on a plaintiff for filing a lawsuit. It would amount to a kind of punishment on Hardin for having the temerity to seek justice in a court of law.

Defendants have established that newly emerged material facts warrant reconsideration of that portion of the Court's order at ECF No. 106 that denied them the ability to use the documents produced by Antelope Valley and Community Regional. Accordingly, their motion for reconsideration is **GRANTED**. On reconsideration, the Court **ORDERS** as follows: Using the guidance provided above, the parties shall meet and confer regarding which documents produced by Antelope Valley and Community Regional (identified by Bates number) Defendants should be

---

[1] Further, as noted above, the parties have briefed this motion in an all-or-nothing fashion. At oral argument, Defendants indicated there may be documents related to other specific topics in these document productions that they would like to use and that may be sufficiently relevant to this case to outweigh Hardin's privacy interests, such as performance reviews and information concerning wages and benefits. Defendants may include such documents in what they discuss with Hardin in meet and confer and in their next submission to the Court.

4

permitted to use in this lawsuit.  By 3:00 p.m. tomorrow,[2] the parties must file either (1) a stipulation and proposed order identifying by Bates number the documents Defendants may use, or (2) a joint discovery letter brief, not to exceed five pages, containing each side's proposal about which documents Defendants should be permitted to use, identified by Bates number.

**IT IS SO ORDERED.**

Dated: September 23, 2019

THOMAS S. HIXSON
United States Magistrate Judge

---

[2] Depositions at which Defendants expect to use Antelope Valley and Community Regional's documents are scheduled for Monday, Tuesday and Wednesday of next week.  *See* ECF No. 222.